UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

**JOHN ENGLISH**
    Plaintiff

**v.**                                                  No. 1:07CV-00101-J

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant

**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Robert Harrison. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 12 and 16, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on January 29, 2007, by administrative law judge (ALJ) William Reamon. In support of his decision denying Title II and Title XVI benefits, Judge Reamon entered the following numbered findings:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2006.

2. The claimant has not engaged in substantial gainful activity since December 25, 2000, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: obesity; a depressive disorder; alcohol dependence; and cocaine dependence, in remission (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to occasionally lift and carry 20 pounds and frequently lift and carry ten pounds. He can sit for six hours and stand/walk for six hours in an eight hour workday, with regular scheduled breaks. He must avoid fumes, odors, dusts, gases, and poor ventilation. Mentally, the claimant is able to understand and remember simple, low level detailed tasks, one to three step tasks. The claimant can maintain adequate concentration, persistence and pace for simple tasks with some moderate difficulty. The claimant is unable to relate adequately to the general public, but is able to interact and get along adequately with coworkers and supervisors for task completion. He is able to respond appropriately to changes in a routine work setting and is able to make simple work-related decisions independently. He can work best in a low stress, non-public work setting involving one to three step tasks with a repetitive routine.

[6.] The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

[7.] The claimant was born on July 26, 1953 and was 48 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

[8.] The claimant has a limited 10th grade education and is able to communicate in English (20 CFR 404.1564 and 416.964).

[9.] Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

[10.] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

[11.] The claimant has not been under a "disability," as defined in the Social Security Act from December 25, 2000, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 19-25).

### Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal

standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

    2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other

3

financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work,

the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## Discussion

This case was denied at the fifth and final step of the sequential evaluation process based upon testimony from a medical expert (ME), licensed psychologist Robert Paul, Ph.D., and vocational expert (VE), Stephanie Barnes, Ph.D. The VE testified that an individual with the mental limitations previously identified by the ME plus the environmental limitations in ALJ's Finding No. 5 plus exertional limitations allowing for "light" work, would retain the ability to perform a "restricted range of small products assembly positions, DOT code 706.684.022" (3,000 jobs in Kentucky and 202,000 in nation) and "produce sorter positions, DOT code 529.687-186" (2,700 positions in Kentucky and 184,000 in nation) (AR, pp. 443-445). The VE was unable to identify any "light" jobs that would allow for a sit/stand option (AR, pp. 444-445). The ALJ did not ask any hypotheticals contemplating a maximum exertional capacity for "sedentary" work perhaps because, if the plaintiff were limited to "sedentary" work, Grid Rules 201.09 and 201.10 would direct an ultimate finding of disability.

First, the plaintiff challenges the ALJ's finding that he can perform "light" work and insists that "[a]ll credible evidence would indicate that the Plaintiff must have the option of sit/stand" (Docket Entry No. 12, p. 12). The magistrate judge concludes that the ALJ's finding is supported

by the assessments of the non-examining state agency physicians, who determined that the plaintiff is able to perform "medium" work, with no mention of needing a sit/stand option (AR, pp. 117-125 and 142-150). The plaintiff argues that his obesity, asthma, high blood pressure, arthritis, etc., necessitate a sit/stand option. The plaintiff invites the court to interpret the pulmonary function study results at AR, p. 112 in functional terms (Docket Entry No. 12, pp. 7-8).

The plaintiff's argument is unpersuasive because lay persons, including the plaintiff, his attorney, the ALJ, and this court, are "simply not qualified to interpret raw medical data in functional terms." *Nguyen v. Commissioner*, 172 F.3d 31, 35 (1st Cir., 1999). Similarly, the mere existence of a diagnosed condition "says nothing about the severity of the condition." *Higgs v. Commissioner*, 880 F.2d 860, 863 (6th Cir., 1988). The plaintiff's argument lacks support in the form of probative evidence from a qualified medical source on the issue of what he can still do despite his impairments. At best, the plaintiff has established that substantial evidence would have supported a conclusion that he requires a sit/stand option. However, an "administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

Next, the plaintiff argues that the ALJ's decision "erroneously did not find his asthma, bronchitis, hypertension, arthritis, or loss of vision in his right eye to be severe impairments" (Docket Entry No. 12, p. 13). For purposes of judicial review, an ALJ's failure to identify an impairment as a "severe" impairment at the second step of the sequential evaluation process is deemed to be a harmless error if the ALJ acknowledged the existence of at least one "severe" impairment and adequately considered the limitations resulting from all impairments at subsequent steps. See *Maziarz v. Secretary*, 837 F.2d 240 (6th Cir., 1987). The plaintiff's argument is

unpersuasive because he has failed to show that the impairments in question necessitate restrictions in excess of those found by the ALJ.

Next, the plaintiff argues that his mental impairment as described by Dr. Paul at the hearing "when combined with the impairments of asthma, bronchitis, hypertension, arthritis, and loss of vision in his right eye, would result in meeting a listed impairment" (Docket Entry No. 12, p. 14). Because the plaintiff has failed to identify the specific Listing at Appendix 1, this assertion warrants no further discussion and does not require reversal of the Commissioner's final decision.

Next, the plaintiff argues that there is a discrepancy between Dr. Paul's actual testimony and the ALJ's subsequent characterization thereof in Finding No. 5 (Docket Entry No. 12, p. 16). At the hearing, the ALJ asked the VE to assume the "psychological limits expressed by Dr. Paul just a moment ago" (AR, p. 443). The magistrate judge concludes that any discrepancy was, at worst, harmless error because it is the testimony itself that governs judicial review.

Next, the plaintiff argues that the ALJ's Finding No. 8 that he has a "10th grade education" is erroneous because he testified that the last grade he completed was the ninth grade (AR, p. 419). When the plaintiff filed his application for benefits, he stated that the highest grade he completed was the tenth grade (AR, p. 85). In any event, the magistrate judge concludes that the plaintiff has failed to show that this discrepancy was material to the ALJ's ultimate decision of lack of disability.

Finally, the plaintiff argues that the ALJ's mental residual functional capacity (RFC) is flawed because the treating physician, David Tamayo, found that the plaintiff consistently has a GAF between 30 and 50 (Docket Entry No. 12, p. 17). GAF (global assessment of functioning) scores are deemed to be subjective and have little bearing on the individual's ability to function in an occupational context. ALJ's need not put "stock" in them. See *DeBoard v. Commissioner*, 2006 WL 3690637 and *Kornecky v. Commissioner*, 2006 WL 305648.

## RECOMMENDATION

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).